ROBERT G. BENNETT, JR., et al., Individually and as Parents and Natural Guardians of ROBERT G. BENNETT, III, an Infant, Respondents, v ROBERT AMES et al., Individually and as Parents and Natural Guardians of ROBERT AMES, JR., an Infant, Defendants, and CASTLE VIEW MANAGEMENT CORPORATION, Appellant.

Third Department, December 11, 1980

#### APPEARANCES OF COUNSEL

*Levene, Gouldin & Thompson (Robert H. Reeder* of counsel), for appellant.

*Twining, Nemia & Hill (Joseph J. Steflik, Jr.,* and *James C. Gacioch* of counsel), for respondents.

#### OPINION OF THE COURT

KANE, J.

Plaintiffs seek to recover damages for injuries sustained by their eight-year-old son on March 30, 1977, when he was struck on the head with a baseball bat by Robert Ames, Jr., a 10 year old. Both children were then residing at the Penn

View Apartments in Broome County, New York, and the incident took place on a common outdoor area of the development. In addition to the parents of the 10 year old, defendants Ames, plaintiffs also sued defendant Castle View Management Corporation, the owner and operator of the apartment. They alleged, among other items, that Castle View had negligently failed to keep the premises safe for the protection of tenants and that it had negligently failed to protect tenants from the violent acts of the Ames boy, despite opportunities to do so and knowledge of prior assaultive behavior on his part. Castle View thereafter moved for summary judgment, based largely on depositions obtained during the course of pretrial disclosure, asserting it owed no duty to plaintiffs under the circumstances, it was not a proximate cause of any harm to plaintiffs' child, and that the occurrence itself was not reasonably foreseeable. Special Term was of the opinion that while a duty existed, disputed questions of fact were presented which precluded summary resolution of the remaining issues. It denied the motion and this appeal ensued. Since we agree that the absence of notice, negligence or causation have not been conclusively established, Castle View can prevail at this stage of the proceedings only if its argument concerning the lack of a duty is accepted.

Contrary to the implications of plaintiffs' amended complaint, the submissions on the motion reveal a factual situation which does not involve the well-recognized obligation of landlords to maintain the common areas of leased buildings and surrounding grounds in a reasonably safe condition for the use of tenants. No effort was made to demonstrate that the site of the incident was physically defective in any respect, or to show that the area itself became unsafe by reason of the activity which Castle View allowed to occur thereon (cf. *Rhabb v New York City Housing Auth.*, 41 NY2d 200; *Caldwell v Village of Island Park*, 304 NY 268). Thus, while plaintiffs have attempted to invoke a familiar concept of premises liability, it is readily apparent that the facts of this case would not suffice to permit recovery from Castle View based on a violation of the ordinary responsibilities which attach to the ownership and control of realty.

Acknowledging general principles that landlords are not insurers of their tenants' safety and do not stand *in loco parentis* to the children of their tenants (cf. *Bullis v Schuyler Hgts.*, 276 App Div 630, affd 302 NY 722), plaintiffs urge, nevertheless, that a duty of reasonable care existed on the part of Castle View to protect their son from injury under the particular circumstances of this case. Indeed, this was their primary contention before Special Term in resisting defendant's motion and it now forms the crux of this appeal. Two factors are said to warrant the recognition of such a duty. The first, already mentioned, is that Castle View was fully aware of the propensity of the Ames boy to harm other tenants' children. The second is a provision in the Ames' lease specifying that if a tenant "commits any acts which could reasonably render him objectionable as a TENANT to LANDLORD or to any other TENANT" Castle View might elect to cancel the lease on three days' notice. In addition, it was further recited that "[s]uch election shall be in the discretion of LANDLORD and, when exercised, shall be conclusive upon TENANT".

In entering into a lease, parents do not surrender custody or control of their children to landlords and, quite obviously, landlords do not undertake to regulate the behavior of their tenants' children. The parties do not envision participation by landlords in the parent-child relationship and it would be unrealistic to conclude that the power to evict, no matter how broadly worded, furnishes landlords with a reasonable opportunity or effective means to prevent such children from injuring third parties. If parents fail to take adequate charge of their children, it can hardly be thought that the threat or fact of expulsion would remedy unacceptable conduct. Consequently, even if it were proven that Castle View knew of a pattern of damage inflicted by the Ames boy on others, we discern nothing in the mere tenancy arrangement chosen by his parents that would serve as a basis for imposing liability on it for his acts.

The same reasoning applies when the matter is viewed from the standpoint of tenants exposed to harm. Unless some particular duty is assumed (e.g., *Sherman v Concourse Realty Corp.*, 47 AD2d 134 [installation of a security system]; *Geigel v New York City Housing Auth.*, 17 AD2d

838; *Da Rocha v New York City Housing Auth.*, 282 App Div 728 [adoption of regulations governing use of facilities]), tenants may not justifiably expect their landlords to protect them from the acts of third parties, including other tenants (see *Tobias v Lewis*, 182 App Div 598, affd 230 NY 571). Assuming that the quoted lease provisions were also contained in plaintiffs' agreement, they may not be treated as the recognition of some increased obligation on the part of Castle View. The terms are not phrased as affirmative representations; they do not appear to be designed specifically for the protection of other tenants; and, most importantly, plaintiffs have not demonstrated that they relied upon them when executing their lease. In addition, apart from contractual features of the accord, plaintiffs have not suggested that Castle View adopted a policy of evicting objectionable tenants. Thus, we conclude that there was nothing in the relationship between plaintiffs and Castle View imposing any special duty on it to guard against the type of injury which arose in this case.

Special Term examined related authorities from several other jurisdictions and its decision reflects a careful analysis of the pertinent issues which has assisted us in the determination of this appeal. However, we conclude that Castle View's argument should be accepted; it owed no duty to plaintiffs' child under the circumstances presented.

The order should be reversed, on the law, with costs, and the motion for summary judgment dismissing plaintiffs' amended complaint against defendant Castle View Management Corporation granted.

MAHONEY, P. J., GREENBLOTT, SWEENEY and HERLIHY, JJ., concur.

Order reversed, on the law, with costs, and motion for summary judgment dismissing plaintiffs' amended complaint against defendant Castle View Management Corporation granted.